IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVANG PATEL                         :
                                     :        CIVIL ACTION
            v.                       :
                                     :        NO. 20-3856
ATTORNEY GENERAL WILLIAM P.          :
BARR, ET AL.                         :

## MEMORANDUM

**SURRICK, J.**                                    **AUGUST 13, 2020**

Plaintiff Devang Patel faces imminent deportation from the United States.  Over two

months ago, before he had been scheduled for deportation, Patel filed two motions with the

Board of Immigration Appeals ("BIA").  Disposition of those motions may ultimately cancel his

removal, or at least allow him to seek judicial review and a stay of removal from the Third

Circuit.  The BIA has not yet ruled on the motions.  Patel has come to this Court seeking an order

compelling the BIA to rule on the two motions.

Presently before the Court is Defendants' Motion to Dismiss for lack of subject matter

jurisdiction.  For the following reasons, the Motion will be denied and execution of Patel's order

of removal will be stayed pending disposition of this matter.[1]

## I.        BACKGROUND

Patel is a native of India.  In 2008, he was admitted to the United States pursuant to an

H-1B visa.  On May 6, 2019, the Department of Homeland Security ("DHS") issued a Notice to

_____

[1] The Defendants in this matter are:  William P. Barr, in his official capacity as Attorney
General of the United States; James R. McHenry, in his official capacity as Director of the
Executive Office for Immigration Review; David H. Wetmore, in his official capacity as
Chairman of the BIA; and Chad Wolf, in his official capacity as Acting Secretary of the

Appear to Patel and placed him in removal proceedings for overstaying his visa.  (Compl. ¶ 12, ECF No. 1.)  Patel feared that upon his return to India, he would face a serious risk of persecution and harm from his uncle, a politically connected individual who has made death threats to Patel on numerous occasions, threatened Patel's family, and confiscated real property belonging to Patel.  As a result, Patel hired private counsel to apply for cancellation of removal proceedings and protection under the Convention Against Torture ("CAT").  (*Id*. ¶ 13.)

Patel asserts that his attorney failed to adequately prepare himself and Patel for the merits hearing on his application for cancellation.  (*Id*. ¶ 13.)  On January 17, 2020, the Immigration Judge ("IJ") denied Patel's application and ordered him removed to India.  In so doing, the IJ reasoned that Patel had been convicted of a crime involving moral turpitude, theft by unlawful taking, in violation of 18 Pa. C.S.A. § 3921(a).  Patel appealed *pro se* to the BIA, which dismissed his appeal and entered a final order of removal on May 11, 2020.  (*Id*. ¶ 14; *see also* ECF No. 3-1.)

On June 4, 2020, through new counsel, Patel filed a motion to reopen and a motion to reconsider with the BIA.  (Compl. ¶ 15.)  In the motion to reopen, Patel asserts ineffective assistance of prior counsel.  (*Id*. ¶ 16.)  In the motion to reconsider, Patel asserts that the IJ failed to apply binding Third Circuit precedent regarding Patel's CAT claim, and that the BIA erred by failing to consider the IJ's errors and by summarily dismissing Patel's *pro se* appeal.  (*Id*. ¶ 17.) DHS never opposed the motions, which are still pending today.  (*Id*. ¶¶ 19, 21.)

On July 30, 2020, Patel was informed that he would be deported on August 10, 2020. The following day, July 31, 2020, Patel filed for an emergency stay of removal with the BIA.

---

Department of Homeland Security.  According to Patel, these officials are empowered to order the BIA to adjudicate his pending motions.  (Compl. ¶¶ 8-11, ECF No. 1.)

The BIA denied his request that same day.  (*Id.* ¶ 20.)

The circuit courts of appeal have exclusive jurisdiction to review removal orders and decisions on motions to reopen and reconsider.  However, unless and until the BIA decides the two outstanding motions, Patel cannot seek judicial review of his case with the Third Circuit. (*See id.* ¶¶ 23-27 (citing 8 U.S.C. §§ 1252(a), (b).)  Moreover, unless and until Patel can file a petition for review with the Third Circuit, he cannot seek a stay of removal from the Third Circuit.  (*See id.*; *see also* Standing Order Regarding Immigration Cases, Third Circuit Court of Appeals (Aug. 5, 2015), *available at* https://www.ca3.uscourts.gov/sites/ca3/files/BIA%20Standing%20Order%20final.pdf.)

On Friday afternoon, August 7, 2020, three days before his scheduled deportation, Patel filed a Complaint in this Court seeking an order compelling the BIA to decide his pending motions.  In support of his claim for relief, Patel invokes the Mandamus Act, 28 U.S.C. § 1361 (Count I), and the Administrative Procedures Act, 5 U.S.C. § 706(1) ("APA") (Count II). Simultaneously, Patel filed an Emergency Motion for Temporary Restraining Order in which he sought a stay of his deportation pending the Court's determination of his claims.  (ECF No. 3.) On Saturday, August 8, 2020, Defendants filed a response to Patel's Emergency Motion, as well a Motion to Dismiss for lack of subject matter jurisdiction or, in the alternative, to transfer this matter to the United States District Court for the Middle District of Pennsylvania, or to the United States District Court for the Western District of Louisiana.  (ECF No. 7.)  A hearing was held in open court on Saturday afternoon (ECF No. 9), at the conclusion of which we issued an order temporarily staying removal proceedings pending a determination over whether we have jurisdiction to hear this matter.  (ECF No. 10.)  For the reasons that follow, we conclude that we do.

## II.     DISCUSSION

### A.     Standard of review

In order to adjudicate a case, a federal court must have subject matter jurisdiction.

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986).  The Government

challenges this Court's subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure

12(b)(1).  "In evaluating a Rule 12(b)(1) motion, a court must first determine whether the

movant presents a facial or factual attack."  *In re Schering Plough Corp.*, 678 F.3d 235, 23 (3d

Cir. 2012).  "In reviewing a facial challenge, which contests the sufficiency of the pleadings, 'the

court must only consider the allegations of the complaint and documents referenced therein and

attached thereto, in the light most favorable to the plaintiff.'"  *Id*. (quoting *Gould Elec. Inc. v.

United States*, 220 F.3d 169, 176 (3d Cir.2000)).  "A factual attack, on the other hand, is an

argument that there is no subject matter jurisdiction because the facts of the case … do not

support the asserted jurisdiction."  *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347,

358 (3d Cir. 2014).  On a factual attack, the "court may weigh and 'consider evidence outside the

pleadings.'"  *Id*. (quoting *Gould Elecs. Inc.*, 220 F.3d at 176).

The Government has appended to its Motion various documents related to the underlying

removal proceedings.  (*See* ECF Nos. 7-3, 7-4, 7-5.)  The Government thus contends that it

presents a factual attack to jurisdiction.  We disagree.  Our resolution of the jurisdictional issue

does not depend on a consideration of the Government's exhibits, and the parties do not appear

to dispute the facts of this case.  Rather, the Government asserts that pursuant to the relevant

statutes, Patel's claim on its face is insufficient to invoke the subject matter jurisdiction of the

court.  That is a facial attack.  *See Red Hawk Fire & Security, LLC v. Siemens Indus. Inc.*, --- F.

Supp. 3d ---, No. 19-13310, 2020 WL 1502932, at *2 (D.N.J. Mar. 30, 2020) (citing *Davis v.

4

*Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *Aichele*, 757 F.3d at 358).  Moreover, the Government "filed the attack before it filed any answer to the Complaint or otherwise presented competing facts.  Its motion [is] therefore, by definition, a facial attack."  *Aichele*, 757 F.3d at 358; *see also Askew v. Trustees of General Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial."); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977) ("A factual jurisdictional proceeding cannot occur until [the] plaintiff's allegations have been controverted.").

**B.      8 U.S.C. § 1252 does not divest the District Court of jurisdiction**

The Government asserts that this Court lacks jurisdiction under 8 U.S.C. §§ 1252(a)(5), (b)(9), & (g).  Section 1252 is entitled "Judicial review of orders of removal."  Subsection 1252(a)(5), entitled "Exclusive means of review," states in relevant part that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal."  Clearly § 1252 delegates to the courts of appeal exclusive jurisdiction to engage in judicial review of removal orders.  However, Patel is not asking us to review his removal order.  He is not asking this Court to review any decision by the IJ or BIA in this matter.  Rather, Patel is asking the Court to compel the BIA to decide his pending motions and to stay the removal order until the BIA does so.  Accordingly, § 1252(a)(5) does not apply.  *See Las Americas Immigrant Advocacy Ctr. v. Trump*, No. 19-2051, 2020 WL 4431682, at *6 (D. Or. July 31, 2020) (finding § 1252(a)(5) inapplicable where the court "is not being asked to review any decision by an immigration court, nor would a ruling in Plaintiffs' favor have the effect of reversing any order of removal"); *Compere v. Nielsen*, 358

F. Supp. 3d 170, 177 n.8 (D.N.H. 2019), *appeal dismissed*, No. 19-1303, 2019 WL 4598236 (1st

Cir. May 30, 2019).

The same goes for § 1252(b)(9), which states:

**(b) Requirements for review of orders of removal**

*With respect to review of an order of removal* under subsection (a)(1), the
following requirements apply:

…

**(9) Consolidation of questions for judicial review**

Judicial review of all questions of law and fact, including interpretation and
application of constitutional and statutory provisions, arising from any action
taken or proceeding brought to remove an alien from the United States under this
subchapter shall be available only in judicial review of a final order under this
section.   Except as otherwise provided in this section, no court shall have
jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas
corpus provision, by section 1361 or 1651 of such title, or by any other provision
of law (statutory or nonstatutory), to review such an order or such questions of
law or fact.

8 U.S.C. § 1252(b)(9) (italicized emphasis added).  As the text of § 1252(b) suggests, the

jurisdictional limitation in § 1252(b)(9) is "inapplicable where a petitioner is not challenging an

order of removal."  *Doe v. Rodriguez*, No. 17-1709, 2018 WL 620898, at *4 (D.N.J. Jan. 29,

2018) (citing *Chehazeh v. Attorney General*, 666 F.3d 118, 133 (3d Cir. 2012) (holding that

"§ 1252(b)(9) applies only "[w]ith respect to review of an order of removal"); *see also Canal A*

*Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257 (11th Cir. 2020) (noting that § 1252(b)(9)

"only affects cases that involve[] review of an order of removal" (internal quotations omitted));

*Las Americas*, 2020 WL 4431682, at *6 (noting that §§ 1252(a)(5) and (b)(9) do not "preclude

judicial review for all questions of law that may be somehow related to removal proceedings").

6

Because Patel is not challenging his order of removal in this proceeding, § 1252(b)(9) does not apply.[2]

With regard to § 1252(g), entitled "Exclusive jurisdiction," this provision states in relevant part that "[e]xcept as provided in this section … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."   Some courts interpret § 1252(g) broadly to preclude district courts from entertaining any claims that have even a remote bearing on removal proceedings.  *See Sharif v. Ashcroft*, 280 F.3d 786, 787-88 (7th Cir. 2002) (holding that under § 1252(g), "a district court lacks jurisdiction to compel the [Government] to initiate or resolve proceedings that would lead to relief from removal"); *see also Bhatt v. Bd. of Immigration Appeals*, 328 F.3d 912, 914-15 (7th Cir. 2003) (holding that a plaintiff "'may not avoid the § 1252(g) bar by the simple expedient of recharacterizing a claim as one challenging a refusal to act'" (quoting *Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002))).  This is the position that the Government is asking us to take in this matter.  Upon review of the statute and relevant precedents, however, we decline to afford such an expansive construction to the jurisdictional bar in § 1252(g).

---

[2] The scope of § 1252(b)(9)'s jurisdictional limitation is the subject of much debate.  *See Chehazeh*, 666 F.3d at 132-33; *Las Americas*, 2020 WL 4431682, at *6-7.  This past June, the Supreme Court explained that "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision … to seek removal,' or 'the process by which … removability will be determined.'"  *Dep't of Homeland Sec. v. Regents of the Univ. of California* 140 S. Ct. 1891, 1907 (2020) (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (plurality opinion)).  However, the Court has declined to "provide a comprehensive interpretation" of § 1252(b)(9)'s jurisdictional bar, including whether it applies to procedural issues like the one presently before us.  *Jennings*, 138 S. Ct. at 841.  Without any controlling authority to the contrary, we adhere to the Third Circuit's holding that "§ 1252(b)(9) applies only "[w]ith respect to review of an order of removal."  *Chehazeh*, 666 F.3d at 133.

In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999), the Supreme Court rejected the notion that "§ 1252(g) covers the universe of deportation claims— that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" The Court also regarded § 1252(g) as "narrow," explaining:

> The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.

> It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*Id*. at 482, 486 (emphasis in original).

This narrow interpretation of § 1252(g) is discussed in the case of *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927 (D. Minn. 2011). In *Al-Rifahe*, immigration officials failed to adjudicate a noncitizen's application for adjustment of status for over 13 years. The noncitizen filed suit under the APA, claiming unreasonable delay and seeking an order compelling the Government to dispose of his application. *Id*. at 929-30. The Government moved to dismiss for lack of subject matter jurisdiction, asserting in part that § 1252(g) stripped the district court of jurisdiction to hear the claim. *Id*. at 933. Citing *Reno*, the court found a "likely inapplicability of § 1252(g) to claims of *inaction*." *Id*. at 934 (emphasis in original).

Likewise, in the case of *Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1049 (W.D. Wis. 2007), immigration officials failed to adjudicate a noncitizen's application for adjustment of status for almost five years. The noncitizen filed suit under the Mandamus Act and APA, seeking an order compelling the Government to adjudicate his application. *Id*. The Government asserted a lack

8

of subject matter jurisdiction, invoking § 1252(a)(2)(B).  That provision states in relevant part that "no court shall have jurisdiction to review … any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B); *see also Saleem*, 520 F. Supp. 2d at 1050.  The court concluded that because § 1252(a)(2)(B) specifically applies to a Government "decision or action," and the plaintiff was objecting to the Government's "*refusal* to make a 'decision' or to take 'action' on his application," the provision was inapplicable.  *Saleem*, 520 F. Supp. 2d at 1050 (emphasis in original).  The court went on to note that the "Defendants' view that plaintiff is challenging an 'action' contradicts … common sense."  *Id.*; *see also Al-Rifahe*, 776 F. Supp. 2d at 932 (agreeing with plaintiff's assertion that "the indefinite hold on his application constitutes 'inaction,' not a 'decision or action' of which § 1252(a)(2)(B)(ii) precludes review").

Although § 1252(a)(2)(B) is not at issue in this case, the provision's "decision or action" language is also found in § 1252(g).  We conclude that the court's analysis of § 1252(a)(2)(B) in *Saleem* applies with equal weight to § 1252(g).  Patel is not challenging a decision or action of the BIA.  He is challenging the BIA's failure or refusal to decide his motion.  Because the claims in this case pertain to the BIA's delay and do not implicate the Government's decision or action to commence proceedings, adjudicate cases, or execute removal orders, § 1252(g) does not apply.  *See Reno*, 525 U.S. at 482.

### C.     We have subject matter jurisdiction under the APA

"Having succeeded in establishing the absence of any jurisdictional bar, [Patel] must also put forth an affirmative basis for subject matter jurisdiction."  *Al-Rifahe*, 776 F. Supp. 2d at 934; *see also Sprague v. Cortes*, 223 F. Supp. 3d 248, 265 (M.D. Pa. 2016) (noting that "'the burden

of establishing the [existence of subject-matter jurisdiction] rests upon the party asserting

jurisdiction'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))).

"'Although the APA does not provide an independent basis for subject matter

jurisdiction, "[i]t is black-letter law that federal courts have jurisdiction under [28 U.S.C.] § 1331

[federal question statute] over suits against agencies seeking to enforce provisions of the APA.'"

*Al-Rifahe*, 776 F. Supp. 2d at 934 (quoting *Ali v. Frazier*, 575 F.Supp.2d 1084, 1088 (D. Minn.

2008)); *accord Alamgir v. Napolitano*, No. 10-306, 2010 WL 2723209, at *6 (W.D. Pa. July 8,

2010); *Palamarachouck v. Chertoff*, 568 F. Supp. 2d 460, 466-67 (D. Del. 2008).  The APA

states that "[w]ith due regard for the convenience and necessity of the parties or their

representatives and within a reasonable time, each agency shall proceed to conclude a matter

presented to it."  5 U.S.C. § 555(b).  The APA also states that courts "shall … compel agency

action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed

to take a *discrete* agency action that it is *required to take*."  *Norton v. Southern Utah Wilderness

Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).  This does not include "broad

programmatic attack[s]" or "discrete agency action[s] that [are] not demanded by law (which

includes, of course, agency regulations that have the force of law).  Thus, when an agency is

compelled by law to act within a certain time period, but the manner of its action is left to the

agency's discretion, a court can compel the agency to act, but has no power to specify what the

action must be."  *Id*. at 64-65.

There can be no question that the agency actions at issue in this case—the BIA's

decisions on the motion to reopen and motion to reconsider—are discrete actions.  The more

difficult issue is whether the BIA is required to decide those motions in a certain timeframe, or if

it has "limitless discretion with regard to the pace of adjudicating" the motions.  *Al-Rifahe*, 776 F. Supp. 2d at 934.  We conclude that the BIA cannot sit on those motions indefinitely.

Aliens have a statutory right to file motions to reconsider and motions to reopen.  *See* 8 U.S.C. § 1229a(c)(6), (7).  "The decision to grant or deny a motion to reopen or reconsider is within the discretion of the [BIA]."  8 C.F.R. § 1003.2(a).  However, "the [BIA] shall *promptly* enter orders of summary dismissal, or other miscellaneous dispositions, in appropriate cases.  In other cases, after completion of the record on appeal … the Board member or panel to which the case is assigned shall issue a decision on the merits *as soon as practicable, with a priority for cases or custody appeals involving detained aliens*."  8 C.F.R. § 1003.1(e)(8) (emphasis added).

Although no statute or regulation establishes a definitive timeframe in which the BIA must decide motions to reopen and reconsider, the statutory right to file the motions would be meaningless if the BIA was not actually obligated to decide them.  Moreover, according to the agency regulations, the BIA must act promptly on motions before it, especially for aliens who are in custody, such as Patel.  (*See* Compl. ¶ 1.)  The APA also requires that the BIA address all matters presented to it "within a *reasonable* time" and with "due regard for the convenience and *necessity* of the parties.  5 U.S.C. § 555(b) (emphasis added).  For a detained alien facing imminent removal, there must be a limit to how long the BIA can defer a decision on motions that are properly before it, especially when those motions were filed before the noncitizen was assigned a deportation date and adjudication of the motions may affect removal.

For these reasons, we conclude that we have subject matter jurisdiction over Patel's APA claim.[3]

---

[3] Because we have concluded that we have subject matter jurisdiction over Patel's APA claim, we need not assess jurisdiction over the mandamus claim in order for this case to proceed.

### D.        Venue is proper in this District

Patel contends that venue is proper in this District under 28 U.S.C. § 1391(e).  This

provision states in relevant part that where, as here, a defendant is an officer or employee of the

United States acting in his official capacity, venue is proper "in any judicial district in which …

the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e).

According to Patel, he resided in this District before being detained and would continue to reside

here if released from custody.  (Compl. ¶ 6.)  In a footnote, the Government asserts that because

Patel is currently in custody in Winn, Louisiana and all of his immigration proceedings took

place in York, Pennsylvania, this case should be transferred to the Middle District of

Pennsylvania or Western District of Louisiana, pursuant to 28 U.S.C. § 1631.  (*See* ECF No. 7-2

at 15 n.5.)

"The decision to transfer a case pursuant to 28 U.S.C. § 1631 is discretionary."  *In Re*

*Grocott*, 507 B.R. 816, 822 (E.D. Pa. 2014) (citing *Mellon Bank (East) PSFS, N.A. v. DiVeronica*

*Bros., Inc.*, 983 F.2d 551, 558 n.3 (3d Cir. 1993) ("The district court may, in its discretion,

transfer this case pursuant to 28 U.S.C. § 1631 if a motion to do so is seasonably filed.")).  Since

Patel has alleged a plausible basis for venue based on residence, we are satisfied that a transfer is

not warranted at this juncture based on the Government's limited arguments.  *See also Sorcia v.*

*Holder*, 643 F.3d 117, 122 (4th Cir. 2011) (holding that "§ 1631, which speaks exclusively of

jurisdiction, does not mandate transfer where venue is lacking").

---

We note, however, that "[m]ost of the courts that have addressed the issue agree that, for
purposes of compelling agency action that has been unreasonably delayed, the mandamus statute
and the APA are coextensive."  *Palamarachouck*, 568 F. Supp. 2d at 466.  Accordingly, it is
plausible that we have jurisdiction over Patel's mandamus claim as well.

**E.      Patel's removal will be stayed pending adjudication of this matter**

In our August 8 Order, we issued a temporary stay of removal pending our jurisdictional evaluation.  (ECF No. 10.)  Now that we have concluded that the Court has jurisdiction to hear this case, we consider whether that stay should be extended.

"On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court … may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.  Although the plain text of the statute suggests that a risk of irreparable harm alone may justify a stay of agency action, many courts appear to require an assessment of the traditional stay factors before issuing a stay under § 705.  *See Callahan v. United States Dep't of Health & Human Servs.*, 434 F. Supp. 3d 1319, 1336 (N.D. Ga. 2020); *Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 562 F. Supp. 279, 280-81 (E.D. Ark. 1983).  Because we find that Patel can satisfy the traditional stay factors, we need not address this apparent discrepancy.

Before staying removal proceedings, a court must consider:  (1) whether the claimant is likely to succeed on the merits; (2) whether the claimant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  "The first two factors of [this] standard are the most critical."  *Id*.  "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.  These factors merge when the Government is the opposing party."  *Id*. at 235.

With regard to the likelihood of success, "it 'is not enough that the chance of success on the merits be 'better than negligible,''" *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015) (quoting *Nken*, 556 U.S. at 434), but "the likelihood of winning … need not be 'more likely than not.'" *Id.* (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)). Patel meets this standard for his unreasonable delay claim under APA § 706(1). At this early stage of the proceedings, our assessment of the facts of this case is as follows: The BIA issued a final order of removal against Patel on May 11, 2020. On June 4, 2020, Patel filed his motion to reopen and motion to reconsider. On July 30, 2020, Patel was informed that he would be deported on August 10, 2020. The following day, Patel sought an emergency stay of removal from the BIA. The BIA denied his request *that same day* and, in so doing, issued a short order noting that "there is little likelihood that the motion [to reopen] will be granted." (ECF No. 3-1.) After over two months, the motion to reopen and motion to reconsider are still pending.

We question how the BIA could rule on Patel's emergency stay in a day, but not afford any such haste to consideration of his motions, especially when the order denying the emergency stay suggests that the BIA has already reviewed at least one of those motions and found it unavailing. Moreover, Patel filed his motions almost two months before he was even assigned a deportation date. This apparent inconsistency in pace is especially troublesome when the BIA has known for at least two months that Patel is due to be deported and that disposition of his motions may bear on his removal. We are also concerned that the BIA's inaction on the motions is preventing Patel from seeking judicial review of his immigration claims with the Third Circuit, including seeking a stay of removal from the Third Circuit. *See Envmt'l Defense Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970) (noting that "when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot

preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief").  Under these circumstances, we conclude, upon initial review, that Patel is likely to establish an unreasonable delay by the BIA in deciding his motions.

Turning to irreparable harm, "[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable."  *Nken*, 556 U.S. at 435.  Here, Patel contends that he faces a serious risk of persecution if he is deported, and the Government does not refute that contention. Although Patel could theoretically continue prosecuting his immigration claims from abroad, the risk of persecution leads us to conclude that his ability to meaningfully participate in his case could be severely impaired if he were deported.  *See Compere*, 358 F. Supp. 3d at 181-82; *Ragbir v. United States*, No. 17-1256, 2018 WL 1446407, at *18 (D.N.J. Mar. 23, 2018), *appeal dismissed*, No. 18-2142, 2018 WL 6133744 (3d Cir. Nov. 15, 2018).  Accordingly, we are satisfied that Patel has established irreparable harm in the absence of a stay.

With regard to the last two factors, we see little harm to the Government from staying Patel's removal while we adjudicate what is really a simple, narrow claim for relief.  Further, any inconvenience to the Government from the brief delay is far outweighed by the threat of irreparable harm to Patel.  *See Hamama v. Adduci*, No. 17-11910, 2017 WL 2684477, at *3 (E.D. Mich. June 22, 2017).  "The public interest is also better served by an orderly court process that assures that [Patel's] invocation of federal court relief is considered before the removal process continues."  *Id*.

Because Patel has made an adequate showing on all four factors, we will issue a stay of his removal.

Finally, we note the Government's citation to 8 U.S.C. § 1252(f)(2), which states that "no court shall enjoin the removal of any alien pursuant to a final order under this section unless the

alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." However, the Supreme Court has determined that this provision does not apply to a *stay* of removal. *See Nken*, 556 U.S. at 430-33 ("The terminology of subsection (f)(2) does not comfortably cover stays."); *see also Kanivets v. Riley*, 286 F. Supp. 2d 460, 465 (E.D. Pa. 2003) (following the "majority of the circuits that have addressed the issue in holding that Section 1252(f)(2) does not apply to stay of removal").

III.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss will be denied. Execution of Plaintiff's final order of removal will be stayed until further order of the Court.

An appropriate order follows.

BY THE COURT:


/s/ R. Barclay Surrick
R. BARCLAY SURRICK, J.

16